IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALMARIS SERRANO-COLÓN, | |
| Plaintiff, | |
| v. | CIV. NO.: 16-1268 (SCC) |
| DEPARTMENT OF HOMELAND SECURITY ET AL., | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Almaris Serrano-Colón filed this action pursuant to the Court's original jurisdiction against Defendants Department of Homeland Security ("DHS"), the Transportation Security Authority ("TSA")[1] and Richard Maldonado for alleged disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*; disability, gender and other forms of discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*; violations of the Administrative Procedures Act, 5 U.S.C. § 551 *et seq* ("APA")[2]; violations of her rights under the Fifth Amendment of the United States Constitution; and, invoking the Court's supplemental jurisdiction, negligence and negligent infliction of emotional distress against Defendant Richard Maldonado

---

[1] The TSA is in fact an administrative agency within the DHS and is therefore not a separate party to this action.

[2] Judicial review under the APA is provided for at 5 U.S.C. § 701 *et seq*.

in violation of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. *See* Docket No. 24.[3] Pending before the Court is Defendants' Motion for Summary Judgment. *See* Docket No. 95. Plaintiff opposed. *See* Docket No. 109. Defendant then replied to Plaintiff's opposition, *see* Docket Number 136, and Plaintiff surreplied, *see* Docket Number 143. For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.    Background

On February 16, 2016, Plaintiff filed this action against Jeh Charles Johnson, as Secretary of DHS; the TSA and Richard Maldonado, bringing claims under the Rehabilitation Act, the APA, the Fifth Amendment and the Puerto Rico Civil Code. *See* Docket No. 1. Plaintiff later amended the Complaint, adding a cause of action under Title VII. *See* Docket No. 24. Plaintiff alleges that from 2008 to 2011, she was denied accommodations for her disability (fibromyalgia), encountered difficulty in obtaining leave under the Family and Medical Leave Act ("FMLA") and wrongly had certain absences marked Absent Without Leave ("AWOL"). Plaintiff further alleges that between 2013 and 2015, TSA management denied her requests for reduced work schedule, placed her on sick leave restriction requiring medical documentation,

---

[3] Docket Number 24 is Plaintiff's Amended Complaint; the original complaint also named Jeh Charles Johnson as a defendant and did not include the Title VII claim. *See* Docket No. 1.

declined to provide her with advanced sick leave or leave without pay and coded her AWOL, eventually terminating her position. Plaintiff alleges that such behavior constituted discrimination based on her disability, gender and parental status and retaliation for her past Equal Employment Opportunity ("EEO") activity.

Defendants moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief could be granted. *See* Docket No. 26. However, the Court stayed this matter pending the appearance of new legal representation for Plaintiff after she filed to appear *pro se*. *See* Docket Nos. 39 and 42. Consequently, the Court denied without prejudice Defendants' Motion to Dismiss and administratively closed the case pending appearance of Plaintiff's counsel. *See* Docket No. 42. Counsel eventually filed an appearance on Plaintiff's behalf, and Defendants answered the Amended Complaint. *See* Docket Nos. 43, 45.

On February 17, 2017, Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code, which was later converted into a case under Chapter 7 of the Bankruptcy Code. *See* Docket No. 76. As part of the bankruptcy case, the current matter became property of Plaintiff's bankruptcy estate, to which Noreen Wiscovitch-Rentas was named trustee. *See id.* As trustee, Ms. Wiscovitch-Rentas was named a co-plaintiff to this action, given that she was a party with interest due to her role in the bankruptcy matter. *See id.* The

bankruptcy case was eventually settled, and Ms. Wiscovitch-Rentas was consequently dismissed as a plaintiff to the current action. *See* Docket Nos. 144, 145.

After discovery, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff cannot establish a *prima facie* cause of action under Title VII, that Rehabilitation Act claims are not cognizable given First Circuit case law, that her remaining federal-law claims are preempted by the Civil Service Reform Act, Pub. L. No. 94-454, 92 Stat. 1111 (1978) ("CSRA"), and the individual claims against Defendant Maldonado fail for an array of reasons. *See* Docket No. 95, 96 and 98. After numerous extensions of time and procedural incidents, Plaintiff opposed. *See* Docket Nos. 109, 111.

## II.    Undisputed Facts

In order to make its factual findings for the purposes of this Opinion and Order, the Court considered Defendants' Undisputed Statement of Material Facts ("DUSMF") at Docket Number 96; Plaintiff's Response Statement of Material Facts ("PRSMF") at Docket Number 109, Exhibit 1; Plaintiff's Additional Statement of Uncontested Material Facts ("PASUMF") at Docket Number 109, Exhibit 1; and Defendants' Answer to Plaintiff's Undisputed Statement of Material Facts ("DAPUSMF") at Docket Number 136.

1. Plaintiff began working for TSA as a part-time Transportation Security Officer ("TSO") at Mercedita/Ponce International Airport ("PSE") in Puerto Rico on October 14, 2007. DUSMF ¶ 1; PRSMF ¶ 1.

2. As a TSO, Plaintiff was responsible for screening passengers and their property at PSE to mitigate threats of aviation security. DUSMF ¶ 2; PRSMF ¶ 2.

3. TSOs must, as part of their job description, demonstrate the ability to repeatedly lift and carry items weighing up to seventy pounds, maintain the physical agility to ensure the ability to squat and bend and maintain the ability to walk up to two miles during a shift and to stand for prolonged periods of time. DUSMF ¶ 4; PRSMF ¶ 3.

4. Generally, Plaintiff's work schedule consisted of five days of work with two consecutive days off, although for some periods of time TSA permitted Plaintiff to work for four days each week and take three days off. DUSMF ¶ 8; PRSMF ¶ 8.

5. During her employment as TSO, Plaintiff was a single mother with two children. DUSMF ¶ 10, n.2; PRSMF ¶ 10.

6. Defendant Transportation Security Manager ("TSM") Richard Maldonado was aware of Plaintiff's parental status since 2008. PASUMF ¶ 4; DAPUSMF ¶ 4.

7.  Plaintiff claims she was diagnosed with fibromyalgia in 2008. DUSMF ¶ 11; PRSMF ¶ 11.

8.  Plaintiff's supervisor granted numerous paid and unpaid leave requests of Plaintiff from 2010 through 2015, permitting her to take time off to attend to personal needs and to take vacation. DUSMF ¶ 12; PRSMF ¶ 12.

9.  Plaintiff was twice approved for TSA's voluntary leave transfer recipient program, through which she was eligible for other TSA employees to donate leave to her. Plaintiff received donated leave on one of the two occasions. DUSMF ¶ 13; PRSMF ¶ 13.

10. From 2010 to Plaintiff's removal in 2015, TSA took issue with Plaintiff's attendance record. DUSMF ¶ 16; PRSMF ¶ 16.

11. TSOs were required to request scheduled absences at least seven days in advance, and unscheduled absences at least sixty minutes in advance. DUSMF ¶ 17; PRSMF ¶ 17.

12. TSA attendance policies concerning absences without leave ("AWOL") required TSOs to obtain prior approval for all absences from duty, including requests for leave without pay ("LWOP"), except in the event of emergencies. DUSMF ¶ 18; PRSMF ¶ 18.

13. Pursuant to TSA policy, an employee is placed on AWOL status if she takes an unauthorized absence without providing the required administratively

acceptable documentation in support of such an absence. AWOL is not a disciplinary action itself but may serve as the basis for a disciplinary action. DUSMF ¶ 18; PRSMF ¶ 19.

14. Beginning in 2014, TSA policy also stated that an employee's time may be charged as AWOL when an employee fails to report for duty without approval, has an unauthorized absence from the workplace during the workday or does not give proper notification for an absence. DUSMF ¶ 21; PRSMF ¶ 21.

15. Between January 10, 2010 and June 18, 2010, Plaintiff requested ten unscheduled absences, four of which fell immediately before or immediately after her days off. For nine of those ten absences, Plaintiff requested for leave under the Family and Medical Leave Act ("FMLA"). DUSMF ¶ 23; PRSMF ¶ 23.

16. On July 12, 2010, Supervisory Transportation Security Officer ("STSO") Lyanne Díaz issued Plaintiff a Letter of Counseling, which explained to Plaintiff that she was required to arrive at her assigned shift when scheduled. The Letter also cautioned Plaintiff that further unexcused absences could result in her being placed on leave restriction or in disciplinary action, including removal. The Letter itself did not constitute a disciplinary measure. DUSMF ¶¶ 24-26; PRSMF ¶¶ 24-26.

17. After three more unscheduled absences for which Plaintiff did not notify at least sixty minutes prior to her shift, STSO Díaz issued Plaintiff a non-disciplinary Letter of Guidance on November 25, 2010. The Letter cited Plaintiff for unacceptable performance for failing to follow instructions to call in a minimum of sixty minutes prior to her shift, and she must do so going forward. DUSMF ¶ 27; PRSMF ¶ 27.

18. During the following pay period, Plaintiff called out of work five more days. DUSMF ¶ 30; PRSMF ¶ 30.

19. Plaintiff submitted a letter to Maldonado on November 11, 2010 in which she explained that she was out of work on the five days in question due to her alleged medical condition but did not include supporting medical evidence or documentation from her physician. DUSMF ¶ 32; PRSMF ¶ 32.

20. Her AWOLs from the prior period were not removed, and she was informed that management did not find the documentation sufficient for the absences. DUSMF ¶¶ 33-34; PRSMF ¶¶ 33-34.

21. Plaintiff cannot point to any comments made by Defendants regarding her medical condition. DUSMF ¶ 35; PRSMF ¶ 35.

22. By December 13, 2010, Plaintiff had accumulated eleven instances of unscheduled absences and one tardy over the prior two months, including her five AWOLs from the prior pay period. Three of these

absences followed or preceded her regular days off. DUSMF ¶ 38; PRSMF ¶ 38.

23. TSMs Layda Rodríguez and Myriam Rodríguez issued Plaintiff a Letter of Leave Restriction, which warned that further unapproved absences could be charged as AWOL and could form the basis for administrative action, including removal, a Letter of Reprimand was issued in January 2011. DUSMF ¶¶ 39-45; PRSMF ¶¶ 39-45.

24. In 2011, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. Her subsequent request to amend her complaint was denied by the EEOC. DUSMF ¶¶ 203, 205; PRSMF ¶¶ 203, 205.

25. In a letter dated May 20, 2012, a fellow TSO stated that Plaintiff and a supervisor TSO, Juan Martínez, at PSE were a couple, and that Plaintiff received special treatment as a result, including that TSO Martínez would alter Plaintiff's record in the TSA's time-keeping system if she arrived late to work. DUSMF ¶ 51; PRSMF ¶ 51.

26. On or about December 9, 2012, Plaintiff entered into a settlement agreement with TSA under which the parties agreed to remove from Plaintiff's record one hour of AWOL for September 4, 2012 and five hours of AWOL for September 5, 2012, and to instead approve

those hours as FMLA/LWOP. DUSMF ¶ 208; PRSMF ¶ 208.

27. In November 2013, Plaintiff was charged with submitting inaccurate time and attendance reports, chronic lateness and failure to follow instructions. Management elected to remove Plaintiff, but after she appealed to an internal TSA board, her removal was reduced to a fifteen-day suspension. DUSMF ¶¶ 50, 55; PRSMF ¶¶ 50, 55.

28. STSO Díaz issued Plaintiff letters of sick leave restriction in May 2014, January 2015 and July 2015. During this time, Plaintiff was enrolled as a full-time law student. DUSMF ¶ 56; PRSMF ¶ 56.

29. From October 28, 2013 to May 10, 2014, Plaintiff requested unscheduled absences on eleven occasions and was late for work on seven occasions. DUSMF ¶¶ 58-59; PRSMF ¶¶ 58-59.

30. From August 26, 2014 to January 20, 2015, Plaintiff had ten unscheduled absences, seven of which Plaintiff reported within sixty minutes before or even after her shift began. DUSMF ¶ 74; PRSMF ¶ 74.

31. STSO Díaz issued Plaintiff a letter of sick leave restriction on or about January 20, 2015 and required Plaintiff to submit medical documentation for unscheduled absences due to sudden illness. The letter notified Plaintiff that any failure to properly request leave or timely provide medical documentation upon

her return could result in a charge of AWOL or disciplinary action, including removal. DUSMF ¶¶ 77-78; PRSMF ¶¶ 77-78.

32. The letter was delivered to Plaintiff by TSM Maldonado, who also explained to her that she was on sick leave restriction due to her absences from work. DUSMF ¶ 80; PRSMF ¶ 80.

33. From January 21, 2015 to June 18, 2015, Plaintiff had twenty-six unscheduled absences. DUSMF ¶ 85; PRSMF ¶ 85.

34. STSO Díaz issued Plaintiff another letter of leave restriction on or about July 23, 2015, which mirrored the letter issued on January 20, 2015. DUSMF ¶¶ 87-90; PRSMF ¶¶ 87-90.

35. Plaintiff was pregnant in 2015 and due in late November 2015. Once Plaintiff's pregnancy was confirmed in March 2015, she informed STSO Díaz. DUSMF ¶ 131; PRSMF ¶ 131.

36. Plaintiff alleges that the majority of the issues causing her absences were attributable to her medical condition and to being pregnant during this time. DUSMF ¶ 91; PRSMF ¶ 91.

37. STSO Díaz charged Plaintiff with AWOL on certain occasions in 2015 as a result of her absences and failure to present proper medical documentation. DUSMF ¶ 92; PRSMF ¶ 92.

38. STSO Díaz occasionally consulted with TSM Maldonado about Plaintiff's attendance issues to seek his guidance, as he was responsible for reviewing the sick leave restriction letters. DUSMF ¶ 98; PRSMF ¶ 98.

39. While Plaintiff was pregnant, she was on light duty, which typically consists of working at positions that allow being seated and do not involve heavy lifting. DUSMF ¶ 99; PRSMF ¶ 99.

40. Plaintiff is not aware of any other TSO who was on a sick leave restriction between 2010 and 2015. DUSMG ¶ 102; PRSMF ¶ 102.

41. Plaintiff was told that another TSO, whom Plaintiff uses as a comparator for this lawsuit, arrived late and TSM Maldonado saw him arriving late but did not code that TSO as AWOL, but Plaintiff does not know of other instances in which that TSO arrived late to work. DUSMF ¶ 110; PRSMF ¶ 110.

42. During her pregnancy, Plaintiff's symptoms of nausea, dizziness, fatigue, infections, weakness and pain worsened. At one point she had to stay home for two weeks without pay to avoid having a miscarriage. PASUMF ¶ 40; DAPUSMF ¶ 40.

43. On or about April 17, 2015, Plaintiff requested twenty hours of advanced sick leave, citing her worsening symptoms. She stated that she went to the hospital and was on bed rest orders by her gynecologist until May 1. DUSMF ¶ 124; PRSMF ¶ 124.

44. Assistant Federal Security Director ("AFSD") for Screening José Rivera denied Plaintiff's request for advanced sick leave on or about April 23, 2015. DUSMF ¶ 126; PRSMF ¶ 126.

45. Plaintiff admits she cannot identify other comparators who were granted advanced sick leave by AFSD Rivera. DUSMF ¶ 129; PRSMF ¶ 129.

46. Plaintiff also requested a reduced work schedule in August 2013, February 2014 and June 2015, among other occasions, citing assistance with childcare, graduate studies and health care as reasons for the reduction request. DUSMF ¶ 159 PRSMF ¶ 159.

47. The August 2013 and June 2015 requests were denied by AFSD Rivera and AFSD for Mission Support Merfil Cuesta, respectively. DUSMF ¶¶ 164, 169; PRSMF ¶¶ 164; 169.

48. Plaintiff alleges that she was discriminated against when her requests for a reduced work schedule were denied based on; (1) transfers of other females out of PSE; (2) awareness that she was a single parent; (3) awareness of her 2011 EEO activity; and (4) awareness of her medical condition. DUSMF ¶ 172; PRSMF ¶ 172.

49. Plaintiff maintained a continuously low leave balance during her employment at TSA. DUSMF ¶ 112; PRSMF ¶ 112.

50. On or about July 26, 2015, Plaintiff was issued a Notice of Proposed Removal primarily based on her attendance issues. The proposed removal charged Plaintiff with (1) failure to follow agency leave procedures by failing to request several unscheduled absences at least sixty minutes prior to her shift; (2) failure to follow instructions by not notifying her supervisor of her need for unscheduled absences; (3) arriving late for work; and (4) being AWOL due to her failure to provide documentation to justify several unscheduled absences. DUSMF ¶ 113; PRSMF ¶ 113.

51. In her reply to the Notice of Proposed Removal, Plaintiff explained she was pregnant and had a disability with symptoms that are exacerbated during pregnancy. She also explained that she believed the prior attendance-related actions were based on her pregnancy and/or disability and constituted discrimination. She also claimed that her disability and pregnancy were mitigating factors for what she claimed were unavoidable absences and lateness. DUSMF ¶ 114; PRSMF ¶ 114.

52. On or about August 24, 2015, AFSD Rivera decided to remove Plaintiff from federal service. DUSMF ¶ 115; PRSMF ¶ 115.

53. TSA policy states that for second and/or successive offenses, the penalty should generally fall within the aggravated penalty range and may often include removal. DUSMF ¶ 120; PRSMF ¶ 120.

54. Plaintiff appealed her removal to an internal TSA board, which affirmed her removal. DUSMF ¶ 122; PRSMF ¶ 122.

55. Plaintiff claims her removal constituted discrimination on the basis of gender, pregnancy, parental status, prior EEO activity and medical condition. She bases this claim in part on AFSD Rivera denying all of her accommodation requests and her request for advanced sick leave due to her low leave balance and on her contention that when she was absent, she provided the required administratively acceptable documentation. Plaintiff admits that she does not know of any comments made against her to substantiate her claim. DUSMF ¶ 123; PRSMF ¶ 123.

56. Plaintiff filed a complaint with the EEO again in 2015, alleging she was subject to harassment and disparate treatment based on her sex, disability, parental status or prior 2011 EEO activity for various denials of requests for a reduced work schedule, other types of leave and for her removal. DUSMF ¶ 212; PRSMF ¶ 212.

57. As part of the EEO investigation, Plaintiff submitted signed and sworn affidavits to the EEO investigator in which she was asked why she believed she was discriminated against as to each of her allegations. In response, Plaintiff failed to mention any comments. DUSMF ¶ 215; PRSMF ¶ 215.

58. During her deposition under which she reviewed her statements made during the EEO investigation, Plaintiff stated that another TSO told her about comments "they" made, stating "There she comes. Now she's pregnant." DUSMF ¶ 219; PRSMF ¶ 219.

## III.    Standard of Review

A Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. That Rule states, in pertinent part, that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Zambrana-Marrero v. Suárez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"). Thus, the party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the

burden then shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*, 477 U.S. at 324.

According to Rule 56, in order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." This means that, as the Supreme Court has stated, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (1986). Thus, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir. 1989).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 905 F.2d 112, 115 (1st Cir. 1990). The Court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## IV.   Analysis

### A.   *Title VII Claims*

Plaintiff alleges that Defendants discriminated against her on the basis of disability, sex, pregnancy, parental status and engagement in prior EEO activity. However, while Title VII makes it "an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin," 42 U.S.C. § 2000e-2(a)(1), it does not provide a cause of action for claims of disability discrimination. *See Arroyo-Ruiz v. Triple-S Mgmt. Grp.*, 206 F.Supp.3d 701, 718-19 (D.P.R. 2016). We therefore limit our analysis to Plaintiff's claims of sex discrimination. Plaintiff's claims of discrimination based on her pregnancy and parental status fall under the umbrella of sex discrimination: Title VII's prohibition against discrimination "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ." 42 U.S.C. 200e(k), and, regarding parental status, the Supreme Court and many Circuit courts, including the First Circuit, have held that "the assumption that a woman will perform her job less well due to her presumed family obligations is a form of sex-stereotyping and that adverse job actions on that basis constitute sex discrimination." *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 44 (1st Cir. 2009) (citing *Nevada Dep't of Human Res. V. Hibbs*, 538

U.S. 721, 730 (2003)); *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 120 (2d Cir. 2004); *Lust v. Sealy, Inc.*, 383 F.3d 580, 583 (7th Cir. 2004); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 57 (1st Cir. 2000); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1045 (7th Cir. 1999).

In the absence of direct evidence of discrimination, as is the case here, the First Circuit employs the *McDonnell Douglas* burden-shifting framework to evaluate whether a plaintiff can make out an inferential case of the alleged discrimination. *See Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77 88 (1st Cir. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 US. 792 (1973)); *Lockridge v. Univ. of Maine Sys.*, 597 F.3d 464, 470 (1st Cir. 2010). Under this analysis, a plaintiff alleging sex discrimination must first establish a *prima facie* case by showing that: "(1) she belonged to a protected class; (2) she performed her job satisfactorily; (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person." *Santiago-Ramos*, 217 F.2d at 54. Such a showing is "not onerous and is easily made." *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003).

Moving on to step two, if such a showing can be made, then there is an inference of discrimination and "the burden of production shifts to the defendant to produce evidence 'that the adverse employment actions were taken for a legitimate, nondiscriminatory reason.'" *Cham v. Station Operators, Inc.* 685 F.3d 87, 94 (1st Cir. 2012) (quoting *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). If the employer can demonstrate such a reason, the analysis then progresses to step three: "[i]f the defendant carries this burden of production, [then] the plaintiff must prove, by a preponderance, that the defendant's explanation is a pretext for unlawful discrimination." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 221 (1st Cir. 2007). Thus, at the summary judgment phase, our task is to decide whether, "viewing the aggregate package of proof offered by [Plaintiff] and taking all inferences in [her] favor, [Defendants have] raised a genuine issue of fact as to whether the termination was motivated by [sex] discrimination." *Domínguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 431 (1st Cir. 2000) (citations and quotations omitted).

Turning to the facts at hand, we must first decide whether Plaintiff has established a *prima facie* case of sex discrimination. She clearly meets three of the elements: she is a woman; she was removed from her employment; and comparable persons continued to perform her work responsibilities. Whether Plaintiff performed her job satisfactorily is unclear, as the parties take extremely different positions and present conflicting evidence as to that element. However, we need not reach this issue because of our finding under the third inquiry. *See Santiago-Ramos*, 217 F.3d at 54.

Defendants proffer a legitimate, nondiscriminatory reason for the adverse employment action: that she had chronic attendance issues and repeatedly failed to follow TSA

attendance policy. We must then pivot to step three, whether such nondiscriminatory reason is merely a pretext for illegal discrimination. Under this prong, a plaintiff "does not have to prove by a preponderance of the additional evidence that discrimination was in fact the motive for the action taken. All a plaintiff has to do is raise a genuine issue of fact as to whether discrimination motivated the adverse employment action." *Domínguez-Cruz*, 202 F.3d at 433 (quoting *Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 50 (1st Cir. 1990)).

Plaintiff has presented evidence that she consistently provided administratively-sufficient documentation for her absences of three days or more, pursuant to TSA policy, and has sworn under oath that she heard negative comments made about her pregnancy while at work. Despite the amount of competing evidence presented by both parties as to Plaintiff's attendance record, we find that, viewing "the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor," *Griggs-Ryan*, 905 F.2d at 115, the evidence provided by Plaintiff is sufficient to raise a genuine issue of fact as to whether her attendance record was a pretext used by Defendants as the basis for her termination. As such, Plaintiff should be able to take her claim of sex discrimination in violation of Title VII to a jury. Our ruling is reinforced by the First Circuit's warning that, "where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory

reason is a pretext for discrimination, court must be 'particularly cautious' about granting the employer's motion for summary judgment." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998) (citing *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983)); *see also Mulero-Rodríguez v. Ponte, Inc.* 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and noting that "determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury" (internal quotations and citations omitted)). We find this to be especially true where, as here, the employee is prosecuting her case *pro se*.

## B.  *Rehabilitation Act Claims*

Defendants argue that Plaintiff's claims under the Rehabilitation Act must be dismissed because the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 596 (2001) (codified in scattered sections of 49 U.S.C.), under which Congress created the TSA, precludes a TSA security screener such as Plaintiff from bringing suit under that statute. In support of that contention, Defendants cite *Field v. Napolitano*, 663 F.3d 505, 510-14 (1st Cir. 2011), which held that the "unequivocally plain language" of the ATSA that TSA security screeners have no cause of action under the Rehabilitation Act. In *Field*, the First Circuit explained that the TSA Administrator had, pursuant to his statutory authority, "declined to extend the Rehabilitation

Act standards to security screeners because, *inter alia*, the Rehabilitation Act standards are not consistent with the physical qualifications that the TSA Administrator has established for the screener position." *Id.* at 511.

However, as Plaintiff points out, Congress amended the CSRA after *Field* to specifically apply protections against discrimination to TSA employees, including discrimination to individuals who are discriminated against "on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791)." 5 U.S.C. § 2302(b)(1)(D). Yet Plaintiff never pursued the route for administrative relief outlined by the CSRA, including seeking review of her removal by the Merit System Protection Board ("MSPB") and appealing to the Federal Circuit, *see Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 10 (1st Cir. 2011), and she may not now invoke its protections at the summary judgment phase. Therefore, Plaintiff's claims under the Rehabilitation Act are dismissed with prejudice.[4]

C.  *APA Claims*

Next, Defendants argue that Plaintiff's claims under the APA are precluded by the CSRA, given that that statute does not afford her a right to judicial review. Plaintiff argues, *inter alia*, that this Court has jurisdiction over her APA claims

---

[4] Defendants also argue that Plaintiff's Rehabilitation Act claims are barred by the 2012 settlement agreement and by the fact that she allegedly failed to timely contact an EEOC counselor. *See* Docket No. 98, pgs. 53-55. However, because we dismiss those claims on other grounds, we need not address Defendants' additional arguments.

generally pursuant to 28 U.S.C. § 1331, as those claims "arise under" federal law, and that the CSRA does not deprive this Court of jurisdiction over those claims.

The CSRA creates an "integrated scheme of administrative and judicial review" for aggrieved federal employees and was designed to replace an "outdated patchwork of statutes and rules" that afforded employees the right to challenge employing agency actions in district courts across the nation, which produced "wide variations in the kinds of decisions . . . issued on the same or similar matters" and a double layer of judicial review in the Federal Courts of Appeals that was "wasteful and irrational." *U.S. v. Fausto*, 484 U.S. 439, 444-45 (1988) (internal quotations omitted).  The First Circuit has interpreted *Fausto* to stand for the general proposition that judicial review is unavailable to a federal employee who has suffered an adverse personnel action if CSRA does not provide judicial review. *Pathak v. Dep't of Veterans Affairs*, 274 F.3d 28, 31 (1st Cir. 2001). The First Circuit explicitly explained that *Fausto* dictates that a federal employee seeking review of an adverse employment action that is not afforded judicial or administrative review under the CSRA cannot go around the statute and assert federal jurisdiction by relying on the APA. *Id.* at 32.

Moreover, the Federal Circuit has ruled that Section 111(d) of the ATSA exempts TSA from laws that otherwise would apply to screener positions, and as such TSOs are not afforded judicial or administrative review under the CSRA. *Conyers v.*

*Merit Sys. Protection Bd.*, 388 F.3d 1380, 1383 (Fed. Cir. 2004). The Federal Circuit, in a matter on appeal from the MSPB, explained that the "[n]otwithstanding any other provision of law" clauses in the ATSA that provides the Administrator of TSA wide latitude in hiring, firing and disciplining TSA screeners meant that Congress intended this screener-specific provision to override more general conflicting statutory provisions to the extent that they would apply to screeners. *Id.* at 1382-83 (citing 49 U.S.C. § 44935[5]).

Thus, synthesizing the rulings of *Pathak* and *Conyers*, judicial review in the district courts, including this Court, is not available to TSOs. Even if TSOs like Plaintiff were afforded review under the CSRA, the exclusive avenue for relief would be through the MSPB and the Federal Circuit, not in the district courts. *See Elgin*, 567 U.S. at 11 ("Just as the CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review, it similarly indicates that extra-statutory review is not available to those employees to whom the CSRA *grants* administrative and judicial review." (internal citations omitted) (emphasis in original)). Thus, an action in this Court is not the appropriate vehicle through which

---

[5] The ATSA has since been amended, but the clauses cited by the Federal Circuit in *Conyers* have been moved from a note to § 44935 to actual sections of the statute itself, which, in our view, further cements the Federal Circuit's conclusion that Congress meant for the screener-specific provisions of the ATSA to override all other provisions of law as they apply to screeners.

Plaintiff may bring her APA claims, and those claims are dismissed with prejudice.

D. *Constitutional Claims*

Defendants argue that Plaintiff's constitutional claims are also precluded by the CSRA. The First Circuit in *Pathak* was presented with the opportunity to address this argument, but declined the invitation given its conclusion that the plaintiff's constitutional claims were "not even colorable," 274 F.3d at 33; it suggested, however, "despite CSRA's expansive reach, we might have jurisdiction to review a plaintiff's constitutional claims." *Elgin*, 641 F.3d at 18, n.12. That issue was more concretely addressed on appeal when the Supreme Court, affirming the First Circuit's conclusion that the CSRA was the exclusive remedy for federal employees to challenge the constitutionality of their removal, held that "the CSRA precludes district court jurisdiction over petitioners' claims even though they are constitutional claims for equitable relief." *Elgin*, 567 U.S. at 8. It is notable, however, that the plaintiffs in *Elgin* belonged to the competitive service category whose constitutional claims could be "meaningfully addressed" in the Federal Circuit pursuant to the CSRA. *Elgin*, 567 U.S. at 17.

We need not dive into these muddy waters because, like the First Circuit in *Pathak*, we find that Plaintiff's constitutional claims are not colorable.

Plaintiff alleges that Defendants violated her Fifth Amendment right to due process[6] by coding her absences as AWOLs and denying her FMLA leave, thus creating an unfavorable personnel file, and depriving her of a property interest – her right to maintain her employment. We find that the actions creating an unfavorable personnel file are not cognizable under the Fifth Amendment's Due Process Clause, but the termination of her employment does fall within its ambit.

In order to establish a procedural due process violation, a plaintiff "must allege first that it has a property interest as defined by [federal] law and, second, that the defendants, acting under color of [federal] law, deprived it of that property interest without constitutionally adequate process." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 8 (1st Cir. 2007); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (explaining that an essential principle of due process is that a deprivation of life, liberty or property "be preceded by

---

[6] That Clause states, in relevant part, states "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

notice and opportunity for hearing appropriate to the nature of the case").[7]

To establish a constitutionally-protected interest in public employment, a plaintiff must demonstrate that she has a legally-recognized expectation that she will retain her position. *Santana v. Calderon*, 342 F.3d 18, 24 (1st Cir. 2003). "In a due process claim stemming from the termination of employment, 'a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed.'" *Acevedo-Feliciano v. Ruiz-Hernández*, 447 F.3d 115, 221 (1st Cir. 2006) (quoting *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir. 2002)).

Here, Plaintiff's employment with the TSA was pursuant to a contract, and we therefore find that she had a reasonable expectation in continued employment. Our inquiry is therefore limited to whether she was afforded adequate process in relation to her termination. We find that she was. In the context of termination, due process generally requires "some kind of hearing" and an opportunity to respond to the allegations made against the employee. *Torres-Rosado v.*

---

[7] While the analysis in these cases was conducted in relation to the Due Process Clause of the Fourteenth Amendment and not the Due Process Clause of the Fifth Amendment, the two may be viewed interchangeably for purposes of due process analysis. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) (explaining that "the Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts" and therefore relying on Supreme Court interpretation of either Clause for purposes of its examination of plaintiff's Fourteenth Amendment due process claim).

*Rotger-Sabat*, 335 F.3d 1, 10 (1st Cir. 2003) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Due process requires that the pre-termination hearing fulfill the purpose of "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cepero-Rivera v. Fagundo*, 41 F.3d 124, 135 (1st Cir. 2005) (citing *Loudermill*, 470 U.S. at 545-46; *see also Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) (explaining that a pre-termination hearing is considered "fair" if the individual to be discharged has the "opportunity to respond, explain and defend").

Upon her Notice of Proposed Removal, Plaintiff was afforded the opportunity to address the charges against her of chronic absence and tardiness, provide a justification and air her grievances regarding what she perceived as discrimination, and even appeal the decision to an internal TSA board once the final removal was issued. Moreover, over the course of her employment as TSO, management issued her a plethora of letters addressing her absences and tardiness and warning her that continued behavior could result in her termination. We therefore find that the standard for constitutionally-adequate due process was easily met in this case, and Plaintiff's claims under the Due Process Clause of the Fifth Amendment are dismissed with prejudice.

Plaintiff also alleges in the Amended Complaint that "[t[he Fifth Amendment of the United States Constitution

guarantees [Plaintiff] equal treatment in her employment," and that Defendants treated her unequally in comparison to other TSA employees. Docket No. 24, §§ 142-43. However, the Fifth Amendment, unlike the Fourteenth Amendment applicable to the individual States, contains no equal protection guarantees. Therefore, Plaintiff's purported Fifth Amendment "equal protection" claims are dismissed with prejudice.

E. *Individual Claims Against Defendant Maldonado*

Plaintiff makes claims against Defendant Maldonado in his individual capacity under Title VII, the Fifth Amendment and Puerto Rico state law. Regarding the constitutional claims, which constitute a *Bivens* claim,[8] Defendants claim that Maldonado is protected by qualified immunity. To determine whether a government official is shielded from *Bivens* liability, a court must determine: (1) "whether the plaintiff has alleged the deprivation of an actual constitutional right"; and, if so, (2) "proceed to determine whether that right was clearly established at the time of the alleged violation." *Abreu-Guzmán v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

---

[8] *Bivens* establishes, "as a general proposition, that victims of constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits." *Soto-Torres v. Fraticelli*, 654 F.3d 153, 157-58 (1st Cir. 2011) (quotations omitted) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). This implied cause of action is the federal analog to a 42 U.S.C. § 1983 suit against state actors. *Id.* at 158.

We have already determined that Plaintiff has failed to establish the violation of a constitutional right; subsequently, her constitutional claims against Maldonado in his individual capacity fail and are dismissed with prejudice.

As to Plaintiff's Title VII claims against Maldonado, we have already stated that disability discrimination is not a basis for Title VII liability and, therefore, Plaintiff's claims that Maldonado discriminated against her by denying her the appropriate leave for her medical condition and failing to provide her with reasonable accommodation are not cognizable under Title VII. Moreover, because Maldonado was not involved in the decision to terminate Plaintiff, her claim of gender discrimination based on her pregnancy resulting in her removal is not colorable as it relates to Maldonado. Therefore, Plaintiff's claims against Maldonado in his individual capacity for constitutional and Title VII violations are dismissed with prejudice.[9]

All that remains of Plaintiff's claims against Maldonado are those arising under Puerto Rico state law. Plaintiff alleges that Maldonado's negligence caused her emotional distress in violation of 31 L.P.R.A. § 5141. The Court has supplemental jurisdiction to hear state-law claims when, and if, the federal court has original jurisdiction in the action and the claims

---

[9] Defendants also argue that Plaintiff's claims against Maldonado are time-barred and precluded by the 2012 settlement agreement. *See* Docket No. 98, pgs. 63-64. However, because we find that these claims fail on other grounds, we do not reach the merits of these arguments.

"form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the Court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3); *see also Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011). Having dismissed all claims against Maldonado over which the Court has original jurisdiction, we, in our discretion, decline to extend our jurisdiction over the remaining state-law claims against that Defendant. Thus, Plaintiff's state-law claims are dismissed without prejudice.

## V.    Conclusion

Defendants' Motion for Summary Judgment at Docket Number 95 is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Title VII claim of gender discrimination as to Defendant DHS relating to her removal survives, while all other federal-law claims are dismissed with prejudice. Her state-law claims against Defendant Richard Maldonado are dismissed without prejudice. Before her remaining Title VII claim reaches trial, we strongly encourage Plaintiff to retain counsel and we remind her that the Court may, in its discretion, award her attorney's fees if she prevails. *See* 42 U.S.C. § 2000e-5(k).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of July 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE