IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALMARIS SERRANO-COLÓN, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS[1] IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, AND RICHARD MALDONADO, <br><br> Defendants. | CIV. NO. 16-1268 (SCC) |

## OPINION AND ORDER

Plaintiff Almaris Serrano-Colón brings this lawsuit against the Department of Homeland Security ("DHS") and her supervisor Richard Maldonado, claiming that they violated the Rehabilitation Act, the Administrative Procedure Act, Title VII of the Civil Rights Act of 1964, the Fifth Amendment,

---

1. Alejandro Mayorkas, as the current Secretary of the Department of Homeland Security, has been automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

and Puerto Rico law by discriminating against her based on her fibromyalgia, pregnancy, status as a single mother, and Equal Employment Opportunity Commission ("EEOC") complaints. Docket No. 24. The defendants moved for summary judgment, Docket No. 95, which we granted in part and denied in part, Docket No. 146. We granted them summary judgment on all but the Title VII claim. *Id.* Both the defendants and Serrano-Colón now move the Court to reconsider our decision. Docket Nos. 151, 157.

## I.    MOTIONS FOR RECONSIDERATION

The defendants and Serrano-Colón believe that either Federal Rule of Civil Procedure 59(e) or Rule 60(b) governs our reconsideration. Docket No. 151, pg. 2; Docket No. 157, pg. 2. We disagree. Rule 59(e), which is a procedural vehicle to alter or amend a judgment, "does not apply to motions for reconsideration of interlocutory orders from which no immediate appeal may be taken, including summary judgment denials." *Nieves-Luciano v. Hernández-Torres*, 397 F.3d 1, 4 (1st Cir. 2005) (citation omitted). And Rule 60(b),

which is a procedural vehicle to seek relief from a final judgment, similarly does not apply to interlocutory orders. *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 874 (1st Cir. 1990); *see generally Watchtower Bible & Tract Soc'y of N.Y. v. Colombani*, 712 F.3d 6, 10 (1st Cir. 2013) ("Ordinarily, a judgment is final . . . only if it conclusively determines all claims of all parties to the action."). We are not bound by either of them. *Roberts v. Winder*, 16 F.4th 1367, 1385 (10th Cir. 2021) ("When determining whether to reconsider an interlocutory order, 'the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b),' which govern a district court's reconsideration of its final judgments." (quoting *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018))).

We, however, have the "inherent power" to reconsider our interlocutory orders "where error is apparent." *Fernández-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008); *see also Farr Man & Co.*, 903 F.2d at 875 (providing that an interlocutory

order is "subject to the district court's discretionary power to alter it at any time prior to the entry of the final decree"). So we will evaluate the parties' motions for reconsideration under our discretionary power to revisit interlocutory orders.

### A.   Undisputed Facts[2]

To provide context for our analysis, we recount the relevant undisputed facts. Serrano-Colón began working for the Transportation Security Administration ("TSA") as a Transportation Security Officer ("TSO") in 2007. UF 1. She is a single mother who claims that she was diagnosed with fibromyalgia in 2008. UF 5, 7. Generally, she worked for five days and then enjoyed two off. UF 4. But sometimes the TSA allowed her to work four days and then take three off. *Id.*

From 2010 until it dismissed her in 2015, the TSA had well-documented concerns about Serrano-Colón's attendance,

---

2. We have summarized the undisputed facts from our order (Docket No. 146), which we cite as "UF." And where necessary, we have added undisputed facts and supported them with citations to Serrano-Colón's response to the defendants' statement of material undisputed facts (Docket No. 109-1).

timeliness, and ability to follow its procedures. UF 10. But she says that most of her absences were an unavoidable consequence of her fibromyalgia and 2015 pregnancy. UF 36. Absent an exigency, the TSA requires employees to arrive to work on time and follow specific attendance procedures. UF 11. If the employee fails to follow them, her absence may be coded as an absence without leave ("AWOL"). UF 12. From January to June 2010, Serrano-Colón took ten unscheduled absences. UF 15. A supervisor sent her a letter informing her that additional absences may lead to disciplinary measures. UF 16. But her absenteeism continued, resulting in another letter which cited her for unacceptable performance. UF 17. In the two months preceding December 13, 2010, she took eleven unscheduled absences. UF 22. She then received a letter placing her on restricted leave and a letter of reprimand. UF 23.

In 2013, the TSA charged her with submitting inaccurate time and attendance reports, being tardy, and failing to follow instructions. UF 27. Management sought to dismiss her, but

an internal TSA board reduced her punishment to a fifteen-day suspension. *Id.* From October 2013 to May 2014, she took eleven unscheduled absences and was late to work seven times. UF 29. From August 2014 to January 2015, she took ten unscheduled absences, seven of which she reported less than sixty minutes before her shift or after her shift had started. UF 30. The TSA then issued her another letter placing her on restricted leave. UF 31. Her leave-restriction letters required her to submit medical documents justifying her absences, UF 31, but she provided acceptable documents for only some of them, Docket No. 109-1, pgs. 53–54; *see also id.* at 57–58. From January to June 2015, she took thirty unscheduled absences. UF 30, 33. And in March 2015, she informed her supervisor that she was pregnant. UF 35.

In July 2015, the TSA issued her a notice of proposed removal based on her attendance issues. UF 50. In response, she said that her supervisors' disciplinary actions regarding her attendance constituted discrimination based on her disability and pregnancy, which, she says, made her absences

and tardiness unavoidable. UF 51. In August 2015, the TSA dismissed her. UF 52. She appealed to an internal TSA board, which affirmed her dismissal. UF 54.

Between 2010 and 2015, she filed two complaints with the EEOC. The first, in 2011, alleged that the defendants had discriminated against her based on her disability. UF 24. And the second, in 2015, alleged that the defendants had discriminated against her based on her sex, pregnancy, single-mother status, and disability. UF 56.

As to her alleged disability, in her 2008 Family and Medical Leave Act ("FMLA") paperwork, her doctor said that when her fibromyalgia flares up, she may miss a few days of work. Docket No. 109-1, pg. 71. Flare-ups might occur once or twice a month. *Id.* But the FMLA does not excuse an employee from providing notice of her absence according to TSA policy. *Id.* at 72. In her 2011 FMLA paperwork, her doctor said that she "had no restrictions, but may require frequent physician visits." *Id.* at 80. Her medical documents did not say that she needed to be excused from the TSA's attendance procedures,

such as arriving to work on time and reporting an unscheduled absence at least sixty minutes prior to her shift. *Id.* at 76–77.

Before we turn to the parties' motions for reconsideration, we preview why Serrano-Colón's claims fail. They all suffer from the same infirmities. The defendants have provided the Court ample evidence that they denied her advanced leave requests, reprimanded her, and ultimately dismissed her because of her long history of absenteeism, tardiness, and failure to follow TSA procedures. And even when she had the four-day work week that she says would have allowed her to fulfill the essential functions of her job (*i.e.*, show up to work), she still struggled with attendance. Moreover, she has produced no evidence from which a reasonable jury could find that the defendants' proffered explanation for their actions was a sham to disguise discriminatory or retaliatory animus. With that said, we turn to the parties' motions.

### B.  The Defendants' Motion for Reconsideration

The defendants have asked us to reconsider two parts of

our decision: (1) denying them summary judgment on Serrano-Colón's Title VII claim, and (2) dismissing her Puerto Rico law claims without prejudice. Docket No. 151, pg. 2.

### 1. Title VII

The defendants argue that we erred when we denied them summary judgment on Serrano-Colón's Title VII claim because, they say, she failed to establish her prima-facie case of discrimination and create a triable issue of fact as to pretext. Docket No. 151, pgs. 3, 7. We agree with them. First, in our earlier order, we failed to reach an element of her prima-facie case. Docket No. 146, pg. 20. That was a lapse because Serrano-Colón bore the burden of producing sufficient evidence to establish each element of her prima-facie case. Second, we determined that she had produced sufficient evidence of pretext based on our belief that she had consistently provided proper documents concerning her absences and sufficient evidence of animus by directing us to a single, vague comment that "they," whoever that may be, allegedly made about her pregnancy. Docket No. 146, pg. 21.

Our decision on pretext is not supported by the undisputed facts, *see* Docket No. 109-1, pgs. 53–54, 57–58, and our decision on animus is incorrect under First Circuit caselaw. We, thus, grant reconsideration of Serrano-Colón's Title VII claim.

Summary judgment is appropriate when the record demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Alston v. Town of Brookline*, 997 F.3d 23, 35 (1st Cir. 2021). In evaluating the record, we construe it in favor of the nonmovant, Serrano-Colón. *Bryan v. Am. Airlines, Inc.*, 988 F.3d 68, 74 (1st Cir. 2021). But she still "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe."[3] *Joseph v.*

---

3. Serrano-Colón filed her summary-judgment opposition and her response to the defendants' statement of uncontested material facts pro se. Pro se status, however, "does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). And we note that Serrano-Colón appears to have a law degree. Docket No. 96-3, pg. 115. We, therefore, do not believe that we must liberally construe her filings. *See Cintrón-Lorenza v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 526–27 (1st Cir. 2002) (providing that leniency may not be warranted where the plaintiff is an attorney). But we

*Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (stating that where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," the movant is "entitled to a judgment as a matter of law").

Serrano-Colón claims that the defendants violated Title VII by discriminating against her based on her sex, disability, pregnancy, single-mother status, and EEOC activity. Docket No. 24, pg. 20. Title VII prohibits the federal government from discriminating against its employees "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Sex-based discrimination includes discrimination based on pregnancy, § 2000e(k), and single-mother status, *see Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43–44 (1st Cir. 2009) (explaining that while Title VII "does not prohibit discrimination based on caregiving responsibility," it does prohibit "sex-based

---

will nonetheless do so because her claims fail for lack of evidence, which no amount of liberal construction can cure.

stereotyping"). Title VII, however, does not prohibit discrimination based on disability. *See* § 2000e-16(a). We, therefore, narrow her Title VII claim to discrimination based on her sex, pregnancy, and single-mother status. And, favorably to her, we will evaluate her claim that the defendants discriminated against her based on her EEOC activity as a Title VII retaliation claim.

Where, as here, there is no direct evidence of discrimination, we apply the *McDonnell-Douglas* framework. *Joseph*, 989 F.3d at 157 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). At the first step, Serrano-Colón must produce evidence sufficient for a reasonable jury to find that she has established a prima-facie case of discrimination: that is, "(1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person." *Paul v. Murphy*, 948 F.3d 42, 49 (1st Cir. 2020) (quoting *Bonilla-Ramírez v. MVM, Inc.*, 904 F.3d 88, 94

(1st Cir. 2018)). If she does so, the burden of production shifts to the defendants "'who must articulate a legitimate, nondiscriminatory reason' for [their] action." *Joseph*, 989 F.3d at 158 (quoting *Theidon v. Harv. Univ.*, 948 F.3d 477, 495 (1st Cir. 2020)). If the defendants do so, then she "bears the ultimate burden of proof to show that [their] proffered nondiscriminatory reason for the adverse employment action was a pretext and that [they] did intentionally discriminate against her because of her sex." *Paul*, 948 F.3d at 49 (quoting *Bonilla-Ramírez*, 904 F.3d at 94). At this final stage, to survive summary judgment, she "must produce sufficient evidence to create a genuine issue of fact as to two points: 1) the [defendants'] articulated reasons for [their] adverse actions were pretextual, and 2) the real reason for the [their] actions was discriminatory animus." *Id.* (quoting *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015)).

We begin with the first step: her prima-facie case. She belongs to a class that Title VII protects from discrimination: She is a woman, she—during the relevant time—was

pregnant, and she is a single mother. But her claim falters at the next element: She has not provided evidence showing that she performed her job satisfactorily. The defendants argue that her consistent absenteeism, tardiness, and failure to follow TSA procedures prevents her from showing this. Docket No. 98, pg. 21. In response, she argues that, had they given her a reasonable accommodation, she would not have had an absenteeism problem. Docket No. 111, pg. 33.

"Attendance is an essential function of any job." *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 33 (1st Cir. 2011) (quoting *Ríos-Jiménez v. Sec'y of Veterans Affs.*, 520 F.3d 31, 42 (1st Cir. 2008)). Absenteeism, therefore, may "undermine any finding that [she] was performing [her] job adequately." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 n.2 (1st Cir. 2003). From 2010 to her dismissal in 2015, Serrano-Colón was consistently absent from and late to work and failed to follow TSA procedures. And the defendants have produced evidence showing that her job required her to be present, on time, and follow procedures. *See, e.g.*, Docket No. 96-5, pg. 56;

*see also* Docket No. 96-1, pg. 9 (explaining that her absences disrupted screening operations).

To be sure, absenteeism is not dispositive of satisfactory job performance where the employee can prove that a reasonable accommodation would have allowed her to perform her job satisfactorily. *See Valle-Arce v. P.R. Ports Auth.*, 651 F.3d 190, 200 (1st Cir. 2011). But Serrano-Colón has not directed the Court to any evidence supporting her contention that a reasonable accommodation would have allowed her to do so. Her contention, indeed, conflicts with the undisputed facts. For even when she had the work schedule that she says would have sufficed as a reasonable accommodation (*i.e.*, four days of work followed by three days off), she still struggled with attendance. *See* Docket No. 109-1, pg. 83 (admitting that she had this work schedule from 2009 to April 2010); *id.* at 12–13 (admitting that six of her ten absences from January to June 2010 occurred before April 2010); Docket No. 111, pg. 72 (admitting that some of her absences during the four-day work-week schedule she enjoyed from June 2012 to February

2013 were caused by her depression and belief that the defendants were trying to fire her); *cf. Benson v. Wal-Mart Stores E., L.P.*, 14 F.4th 13, 28 (1st Cir. 2021) (finding that an accommodation may have allowed the plaintiff to fulfill the essential functions of her job where there was "no reasonable argument that authorizing some absences or tardiness would not enable [her] to show up the rest of the time"). Her own conclusory allegations that she would have been able to do her job satisfactorily had she been given a reasonable accommodation are not enough. *See* Docket No. 111, pg. 33. And even a statement from her doctor to that effect, *see id.*, absent more explanation, is not enough. *Ríos-Jiménez*, 520 F.3d at 42 n.7 (stating that an unsworn declaration from the plaintiff's doctor saying that, with a reasonable accommodation, the plaintiff could perform the essential functions of her job cannot defeat summary judgment). Serrano-Colón, therefore, has failed to establish a prima-facie case of discrimination because she has failed to produce evidence sufficient for a reasonable jury to find that she

satisfactorily performed her job.

Although we could end our analysis here, *Gerald v. Univ. of P.R.*, 707 F.3d 7, 25 (1st Cir. 2015), we continue forward to note the other reasons why her Title VII discrimination claim should not have survived summary judgment. Serrano-Colón has established the next element of her prima-facie case: the defendants took adverse employment action against her. *Paul*, 948 F.3d at 49 (quoting *Bonilla-Ramírez*, 904 F.3d at 94). An adverse employment action is one that "materially change[s] the conditions of the plaintiff's employ," such as a demotion, undeserved negative evaluation, or an undesirable assignment. *Gu v. Bos. Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002). The defendants dismissed her, which is undoubtedly an adverse employment action. *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012). And they denied some of her leave requests, which may have materially altered the conditions of her employ. *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

But she has failed to establish the last element of her prima-facie case—that the defendants continued to have her duties performed by a comparably qualified person. *Paul*, 948 F.3d at 49 (quoting *Bonilla-Ramírez*, 904 F.3d at 94). For she provides us with no comparator who had an attendance record as poor as her own. Disparate treatment between Serrano-Colón and employees outside of her protected class is not "probative of discriminatory animus" unless they are "similarly situated in material respects." *Vélez v. Thermo King de P.R.*, 585 F.3d 441, 451 (1st Cir. 2009) (quoting *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)). She, in other words, must show that her comparators "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Perkins*, 78 F.3d at 751. But she has failed to do because, as the defendants point out, Docket No. 98, pg. 25, she provides us with no evidence showing that any of her comparators had a similarly poor attendance record. She, therefore, cannot show that she was

passed over in favor of someone who was similarly qualified. *See Perkins*, 78 F.3d at 751 (noting that the comparator's conduct was "markedly less serious" than the plaintiff's and that he, unlike the plaintiff, "did not have a history of repeated disciplinary actions over a ten-year period," so he was not a fair congener).

Though she has failed to establish two elements of her prima-facie case, we nonetheless continue. Had she established her prima-facie case, the defendants would bear the burden of producing a "'legitimate, nondiscriminatory reason' for their action." *Joseph*, 989 F.3d at 158 (quoting *Theidon*, 948 F.3d at 495). And they have done so. They have produced ample evidence, such as the contents of the letters that the TSA sent Serrano-Colón, showing that they disciplined her because she was consistently absent from and late to work and failed to follow TSA procedures.

We move finally to the last step of the *McDonnell-Douglas* framework: Serrano-Colón "must produce sufficient evidence to create a genuine issue of fact as to two points: 1) the

[defendants'] articulated reasons for [their] adverse actions were pretextual, and 2) the real reason for the [their] actions was discriminatory animus." *Paul*, 948 F.3d at 49 (quoting *Ray*, 799 F.3d at 113). Pretext may be shown by "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Theidon*, 948 F.3d at 497 (quoting *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014)). She, in other words, must do more than merely "impugn the veracity of the employer's justifications." *Id.* (quoting *Vélez*, 585 F.3d at 452). She must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Paul*, 948 F.3d at 49 (quoting *Ray*, 799 F.3d at 113).

Serrano-Colón, however, has not done so. The defendants have consistently stated that they took disciplinary measures

against her and denied her leave time because of her long history of absences, tardiness, and failure to follow TSA procedures. She has not directed us to any evidence showing weaknesses, implausibilities, inconsistencies, or contradictions in their proffered legitimate reasons, *see* Docket No. 111, pgs. 44–52, or any evidence showing that the defendants did not believe their "stated reason to be credible." *Brader v. Biogen Inc.*, 983 F.3d 39, 57 (1st Cir. 2020) (quoting *Vélez*, 585 F.3d at 452); *Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 16–17 (1st Cir. 2007) (explaining that, when assessing pretext, the court's focus is on the perceptions of the decision maker and, thus, "as long as the [defendant] believed that the [plaintiff's] performance was not up to snuff—and the [plaintiff] has presented no evidence suggesting that [the defendant] thought otherwise—it is not our province to second-guess a decision to fire him as a poor performer"). She, instead, merely speculates. Having provided us with no evidence that the defendants took adverse employment action against her

based on her sex, pregnancy, or single-mother status, she has not met her burden of establishing a triable issue of fact as to pretext. *Paul*, 948 F.3d at 53 (stating that summary judgment in favor of the defendant is proper where the plaintiff has "failed to meet her burden to show that there is a genuine issue of material disputed fact as to whether the defendant's asserted nondiscriminatory reason for taking the adverse actions that it did was pretextual").

We turn finally to discriminatory animus. The only evidence that Serrano-Colón has provided us to show discriminatory animus is her own statement that she heard "the[m]" say, "There she comes. Now she's pregnant." Docket No. 109-1, pg. 107. She argues that this comment "can easily be interpreted as meaning that—now that she is pregnant—there is no hope for her as a TSO." Docket No. 111, pg. 51. First, she has not told us who "they" is. *See Ray*, 799 F.3d at 116 (explaining that the probative value of derogatory remarks is circumscribed if they were made by non-decisionmakers). Second, "[i]solated, ambiguous remarks are

insufficient, by themselves, to prove discriminatory intent."
*Zabala-De Jesus v. Sanofi-Aventis P.R., Inc.*, 959 F.3d 423, 430
(1st Cir. 2020) (quoting *Lehman v. Prudential Ins. Co. of Am.*, 74
F.3d 323, 329 (1st Cir. 1996)). One ambiguous comment, where
we cannot even be sure who said it, is insufficient to defeat
summary judgment. *Paul*, 948 F.3d at 54 (stating that one stray
remark without any context cannot support a reasonable
finding that the plaintiff was discriminated against); *see also*
*González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray
workplace remarks,' as well as statements made either by
non-decisionmakers or by decisionmakers not involved in the
decisional process, normally are insufficient, standing alone,
to establish either pretext or the requisite discriminatory
animus.").

Serrano-Colón has failed to carry her burden to establish
her prima-facie case and create a triable issue of fact as to both
pretext and discriminatory animus. We, therefore, grant
summary judgment to the defendants on her Title VII
discrimination claim.

We turn now to her Title VII retaliation claim and again apply the *McDonnell-Douglas* framework. For her Title VII retaliation claim to survive summary judgment, she must first "make a prima facie showing that (i) [s]he engaged in []protected conduct, (ii) [s]he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." *Paul*, 948 F.3d at 54 (quoting *Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19, 30 (1st Cir. 2015)). "'[P]rotected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (quoting *Cruz v. Coach Stores Inc.*, 202 F. 3d 560, 566 (2d Cir. 2000)). But as the defendants point out, Docket No. 98, pg. 20, Title VII does not prohibit discrimination based on disability, *see* § 2000e-16(a). So her 2011 EEOC activity cannot serve as the basis for her Title VII retaliation claim. *See Fantini*, 557 F.3d at 32 (affirming dismissal of plaintiff's Title VII retaliation claim because the conduct in her complaint was not an unlawful employment

practice under Title VII). She can challenge only the adverse employment actions that occurred after she contacted her EEOC counselor in March 2015. For the cause (protected conduct) must precede the effect (adverse employment action). *Sullivan v. Raytheon Co.*, 262 F.3d 41, 49 (1st Cir. 2001).

We will assume that she has proven the remaining elements of her prima-facie case. That is, we will assume that the defendants' actions after March 2015 (*i.e.*, denying her requests for leave and reduced work hours and dismissing her) are adverse employment actions and that there is a causal connection between them and her March 2015 EEOC activity due to their temporal proximity. *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) ("[T]emporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" (quoting *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007))).

The burden now shifts to the defendants who "must articulate a legitimate, non-retaliatory reason for its employment decision." *Calero-Cerezo v. U.S. Dep't of Just.*, 355

F.3d 6, 26 (1st Cir. 2004). They have done so. They have provided the Court with evidence showing that they denied her advanced leave requests and dismissed her because of her poor attendance record. *See, e.g.*, Docket No. 96-2, pgs. 11–12, 15. They have said that they denied her request for reduced work hours because they were short-staffed. Docket No. 96, pgs. 43–45; *see also* Docket No. 109-6, pg. 14. Because the defendants have met their burden, the burden shifts back to Serrano-Colón who must "show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Calero-Cerezo*, 355 F.3d at 26.

We struggle to discern which facts she provides in support of her Title VII retaliation claim. She advances that her claim "proceeds on account of being based on a denial of a request for accommodation." Docket No. 111, pg. 32. She appears to focus on the advanced sick leave and reduced work hours she requested due to her pregnancy. *Id.* Because we see no freestanding section of her summary-judgment opposition

discussing pretext and animus for Title VII retaliation, we will assume, favorably to her, that her Title VII discrimination arguments apply to her Title VII retaliation claim. But, for the same reasons as before, her claim fails because she has directed us to no evidence showing that the defendants' proffered reasons for denying her requests were pretextual or motivated by retaliatory animus. Pretext and retaliatory animus may be shown by "deviations from standard procedures, the sequence of occurrences leading up to a challenged decision, and close temporal proximity between relevant events." *Harrington v. Aggregate Indus.-Ne. Region, Inc.*, 668 F.3d 25, 33 (1st Cir. 2012). Although there is close temporal proximity between her requests and her 2015 EEOC complaint, she has shown no deviation from standard procedures and the sequence of events does not suggest pretext or animus.

Advanced sick leave is discretionary, and the management's decision to give it is informed by whether it believes that the employee will be able to repay the leave debt.

Docket No. 109-1, pg. 69. Management denied her requests because it doubted her ability to do so. *Id.* at 70. She has admitted that she cannot identify any comparator who was given advanced sick leave. *Id.* at 71. So, we have no evidence that the defendants deviated from standard procedures when they denied it to her. Moreover, the sequence of events (*i.e.*, her absenteeism and the defendants' concerns about it) support the defendants' reason for denying her requests.

As to her requests for reduced work hours, granting them is discretionary and informed by the TSA's needs at the time. Docket No. 109-1, pg. 89. She says that the defendants' explanation (*i.e.*, limited staff) is pretextual because the TSA allowed some TSO's to transfer to other airports, Docket No. 111, pg. 50, though she does not know when they transferred, Docket No. 96-4, pg. 129. Voluntary transfer, however, is distinguishable from reduced work hours because it is based on available jobs at *other* airports. Docket No. 109-6, pg. 14 (explaining that TSO's are "entitle[d]" to sign up online to work at other airports and they are transferred when the

opportunity arises). Finally, she hinges her pretext argument on the defendant's lack of evidence that the airport was short-staffed when she asked for reduced work hours. But there is evidence that the airport was short-staffed from 2010 to 2015: her supervisor, Maldonado, said that it was. Docket No. 109-6, pg. 14. Because Serrano-Colón has failed to provide the Court with evidence of pretext or retaliatory animus, we grant summary judgment to the defendants. *Calero-Cerezo*, 355 F.3d at 26 ("Since [plaintiff] has failed to point to specific facts that would demonstrate any sham or pretext intended to cover up defendants' retaliatory motive, we will affirm the dismissal of her retaliation claim under Title VII.").

### 2. Puerto Rico Law Claims

The defendants argue that we erred when we dismissed Serrano-Colón's Puerto Rico law claims against Maldonado without prejudice rather than with prejudice. Docket No. 151, pg. 23. We dismissed these claims without prejudice because we had dismissed all her federal claims and, thus, declined to exercise supplemental jurisdiction over her Puerto Rico law

claims. Docket No. 146, pg. 32. But instead of arguing that we erred in declining to exercise supplemental jurisdiction, the defendants merely rehash their arguments about the merits of those Puerto Rico law claims. *See* Docket No. 151, pgs. 23–25. Because the defendants do not challenge the ground on which we dismissed the claims, we decline to revisit them.

### C.  *Serrano-Colón's Motion for Reconsideration*

Serrano-Colón, now represented by counsel, has moved the Court to reconsider our decision to grant the defendants summary judgment on her Rehabilitation Act claims and her Fifth Amendment claim.[4] Docket No. 157, pg. 2.

### 1.  **Rehabilitation Act**

Serrano-Colón argues that we erred when we concluded that the defendants are entitled to summary judgment on her Rehabilitation Act claims because she did not exhaust her

---

4. She has also asked us to reconsider our wording of an undisputed fact. Docket No. 157, pg. 23. We stated, "Plaintiff claims she was diagnosed with fibromyalgia in 2008." Docket No. 146, pg. 6. She would rather us say that she was, in fact, diagnosed with fibromyalgia in 2008. We decline her request because none of our decisions hinge on whether she was diagnosed with fibromyalgia.

administrative remedies under the Civil Service Reform Act ("CSRA"). Docket No. 157, pgs. 8–10. We stated that she had to appeal her dismissal first to the Merit Systems Protection Board and then seek review in the U.S. Court of Appeals for the Federal Circuit. Docket No. 146, pg. 25. Upon reevaluating the statutory and regulatory framework, we see that our analysis was incorrect. We, therefore, grant reconsideration of her Rehabilitation Act claims.

Before 2012, the Aviation and Transportation Security Act ("ATSA") precluded TSA employees from suing under the Rehabilitation Act. *See Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011). In 2012, Congress enacted the Whistleblower Protection Enhancement Act ("WPEA"), which provides, as relevant, that "[n]otwithstanding any other provision of law," any person applying to or holding a position with the TSA "shall be covered by . . . the provisions of section 2302(b)(1)" and "any provision of law implementing" it. 5 U.S.C. § 2304.[5]

---

5. Surprisingly, this statute is seldomly cited. We have found only one case analyzing how it impacts prior caselaw holding that the ATSA precludes

Section 2302(b)(1) lists prohibited personnel practices, including disability discrimination under the Rehabilitation Act. § 2302(b)(1)(D). The WPEA, thus, granted Rehabilitation Act protections to TSA employees. *See* S. REP. NO. 112-155, at 20 (2012), https://www.congress.gov/112/crpt/srpt155/CRPT-112srpt155.pdf.

The WPEA also extended to TSA employees the laws implementing section 2302(b)(1). § 2304(a)(2). The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). Serrano-Colón has a so-called "mixed case" because she complains of a serious employment action, *i.e.*, removal, and alleges that it was based on discrimination. *Id.* at 45. The CSRA provides special procedures for mixed cases. *Id.* Before filing suit, an employee must appeal her employer's action to the Merit Systems Protection Board ("MSPB") or file

---

TSA employees from bringing claims under the Rehabilitation Act. *See generally Ruedas-Rojas v. McAleenan*, No. 19-CV-22522, 2020 WL 6143652 (S.D. Fla. June 1, 2020). That case's analysis is consistent with our own.

a discrimination complaint with her agency. *Id.* (citing 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b)). After the MSPB or her agency renders its decision, the employee may seek judicial review. 29 C.F.R. § 1614.302(d)(1), (3) (stating that after receiving a final decision from the agency, the complainant may appeal it to the MSPB or bring a civil action "as provided at § 1614.310(a)"). For mixed cases, contrary to the general rule that judicial review takes place in the Federal Circuit, judicial review takes place in district court. § 7703(b)(2) (providing that discrimination claims under § 7702(a)(1) are excepted from the general rule that MSPB decisions must be appealed in the Federal Circuit); *Kloeckner*, 568 U.S. at 46 ("The enforcement provisions of the antidiscrimination statutes listed in [§ 7703(b)(2)] all authorize suit in federal district court."); *Downey v. Runyon*, 160 F.3d 139, 144 & n.1 (2d Cir. 1998) (stating that, pursuant to § 7703(b)(2) and 29 U.S.C. § 794a(a)(1), disability cases under the Rehabilitation Act are filed under § 717 of the Civil Rights Act of 1964). If the employee opts to file suit in district

court after receiving a final decision from the MSPB or her agency, she must do so within thirty days of the final decision. *See* 29 C.F.R. § 1614.310(a).

The defendants argue that her Rehabilitation Act claims fail because she did not seek review before the MSPB of the TSA's decision to dismiss her, Docket No. 98, pg. 40, and, in response, she argues only that she did not have to, Docket No. 111, pg. 62. It appears that she did not appeal this decision to the MSPB.

She did, however, appeal the TSA's decision to dismiss her to an internal TSA appellate board in its Office of Professional Responsibility, which affirmed her dismissal in December 2015. Docket No. 109-1, pg. 68; Docket No. 96-3, pg. 100; *see also* Docket No. 96-2, pg. 9 n.6. But we note that this internal appellate board appears to lack the authority to review discrimination complaints. Docket No. 157-1, pg. 3. She filed her lawsuit in February 2016. Docket No. 1. If we assume that her appeal to the internal TSA board constitutes appealing her dismissal to the agency, her lawsuit would be untimely. *See*

29 C.F.R. § 1614.310(a) (providing thirty days to file suit). But administrative exhaustion is an affirmative defense and despite bearing the burden of proof, the defendants have not provided conclusive proof that she did not seek review of the TSA's final decision before the MSPB before she filed suit. *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) ("Where, as here, a defendant moves for summary judgment on the basis of an affirmative defense . . . [he] bears the burden of proof and 'cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.'" (quoting *Torres-Vargas v. Santiago-Cummings*, 149 F.3d 29, 35 (1st Cir. 1998))). We, therefore, will turn to the merits.

Serrano-Colón brings discrimination, failure to accommodate, hostile work environment, and retaliation claims under the Rehabilitation Act. *See* Docket No. 24, pgs. 17–18. We begin with her discrimination and failure-to-accommodate claims under the now-familiar *McDonnell-Douglas* burden-shifting framework. First, she must establish that: "1) she was disabled within the meaning of the statute;

2) she was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) the employer took adverse action against her because of the disability." *Ríos-Jiménez*, 520 F.3d at 41. A failure-to-accommodate claim includes these first two elements and requires her to prove that her "employer, despite knowing about the disability, did not acquiesce to a request for a reasonable accommodation." *Id.* (quoting *Calero-Cerezo*, 355 F.3d at 20). If she does so, the burden shifts to the defendants to "articulate a legitimate, non-discriminatory reason for the employment decision and to produce credible evidence to show that the reason advanced was the real reason." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Finally, if they do so, the burden shifts back to her "to establish that the proffered reason is pretext intended to conceal discriminatory intent." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

First, assuming that her fibromyalgia is a disability within the meaning of the Rehabilitation Act,[6] she has not produced evidence showing that an "accommodation would have enabled her to perform the essential functions of [her] job." *Id.* For, as discussed earlier, even with the accommodation she had requested (*i.e.*, a four-day work week), she was often absent. *See id.* at 42 (noting that the plaintiff "had a spotty attendance record even after she was permitted to work part-time as recommended by her psychiatrist"). And some of those absences she attributes not to her disability but, instead, to her depression and belief that the defendants were trying to fire her. Docket No. 111, pg. 72 (explaining her absences during the four-day work week schedule she enjoyed from June 2012 to February 2013). Moreover, she has provided no evidence beyond her own say-so that a reasonable

---

6. Serrano-Colón argues only that her fibromyalgia is a disability under the Rehabilitation Act. Docket No. 111, pg. 64. Because she does not argue and show that her pregnancy was one as well, we evaluate her discrimination and failure-to-accommodate claims based on her fibromyalgia only.

accommodation would have allowed her to be present for her job. That is not enough to survive summary judgment. *Ríos-Jiménez*, 520 F.3d at 42 n.7. Thus, she falters as well on the last element of her failure-to-accommodate claim because she cannot prove that her requested accommodation was reasonable without showing that the "proposed accommodation would enable her to perform the essential functions of her job." *Calero-Cerezo*, 355 F.3d at 23.

Turning to the defendants' burden, they have offered evidence showing that they disciplined Serrano-Colón and denied her leave requests because of her chronic absenteeism, tardiness, and failure to follow TSA procedures. Shifting the burden back to her to show pretext and discriminatory animus, she has once again failed to direct the Court to any evidence in the record showing that the defendants' proffered reasons are a sham to disguise their discriminatory intent. She merely speculates. Having failed to carry her burden to establish her prima-facie case and direct the Court to evidence in the record showing pretext and discriminatory animus, we

grant summary judgment to the defendants on her Rehabilitation Act discrimination and failure-to-accommodate claims.

We turn to Serrano-Colón's hostile-work-environment and retaliation claims. To establish a hostile-work-environment claim, she must "show that her 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment.'" *Ríos-Jiménez*, 520 F.3d at 43 (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006)). But she has admitted that the defendants never made any intimidating or insulting comments to her concerning her disability. Docket No. 109-1, pg. 21. She directs us to no evidence in the record supporting her claim. *See* Docket No. 111, pg. 83. We, therefore, grant summary judgment to the defendants on it.

Finally, we apply the *McDonnell-Douglas* framework to Serrano-Colón's retaliation claim: She must first show that she (1) "engaged in protected conduct," (2) "was subjected to

an adverse action by the defendant[s]," and (3) "there was a causal connection between the protected conduct and the adverse action." *Palmquist v. Shinseki*, 689 F.3d 66, 70–71 (1st Cir. 2012) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012)). The burden then shifts to the defendants to "articulate a legitimate, nonretaliatory reason for [their] decision." *Id.* at 71. Finally, "once such a reason is articulated, it is up to the employee to show that the proffered reason was pretextual and that retaliation was the true reason." *Id.*

We begin with her prima-facie case. She engaged in protected conduct when she filed her 2011 EEOC complaint alleging disability discrimination.[7] Because the only evidence of causation she provides is temporal, we evaluate the next two elements (*i.e.*, adverse employment action and causation) together. Temporal proximity must be "very close" to establish causation. *Calero-Cerezo*, 355 F.3d at 25 ("Three and

---

7. Serrano-Colón bases her Rehabilitation Act retaliation claim on her 2011 EEOC activity. Docket No. 111, pgs. 62, 79–80. We limit our inquiry accordingly.

four month periods have been held insufficient to establish a causal connection based on temporal proximity."). The only actions she complains of within even a year of her complaint is a letter of reprimand and a letter of leave restriction. Docket No. 111, pgs. 62–63. But those are not adverse employment actions because they do not "materially change the conditions of [her] employ." *Gu*, 312 F.3d at 14. Her leave-restriction letter merely required that she comply with extra attendance procedures, such as reporting her absences earlier and justifying unexpected ones with medical documents. Docket No. 109-1, pg. 27. It appears that the letter of reprimand was merely a disciplinary formality that did not carry with it any consequences. *See id.* at pgs. 24–25. Therefore, it does not qualify as an adverse employment action. *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010) ("A materially adverse change in the terms and conditions of employment 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" (quoting *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 23 (1st Cir. 2002))). Moreover, the timing between the

other actions that she complains of, such as denying her leave requests and dismissing her, is too remote to support causation. *See* Docket No. 111, pgs. 62–63 (complaining of events in 2014 and 2015 and events preceding her 2011 EEOC activity). She, thus, has failed to establish her prima-facie case.

The defendants have provided a legitimate, non-retaliatory reason for their actions: her absenteeism, tardiness, and failure to follow procedures. So, the burden shifts again to her to show pretext and retaliatory animus. She, however, has failed to direct us to any evidence showing that the defendants' reasons are pretextual or that their actions were motivated by retaliatory animus. The defendants, therefore, are entitled to summary judgment on her retaliation claim.

### 2. Due Process

Serrano-Colón argues that we erred when we granted summary judgment to the defendants on her procedural due-process claim under the Fifth Amendment because, she says, she was entitled to "post-termination due process," including an appeal before an independent third party. Docket No. 157,

pg. 17. She claims that an independent third party is necessary because the TSA's internal review board cannot review discrimination allegations. *Id.* at 21. Seeing no error, we deny reconsideration.

"It is well established that in every case where a protected property interest is at stake, the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard." *Clukey v. Town of Camden*, 717 F.3d 52, 59 (1st Cir. 2013). The type of notice and hearing required, however, are case specific, and depend on the following factors: (1) the private interest affected by the official action; (2) the "risk of an erroneous deprivation of such interest through the procedures used"; (3) the "probable value, if any, of additional or substitute procedural safeguards"; and (4) the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). But there is no need to decide whether she is entitled to a post-deprivation hearing before a neutral body because in her summary-judgment

opposition, she merely argued that she *can* bring a due-process claim. Docket No. 111, pgs. 89–91. She presented no evidence showing that she had been denied due process of law and she could have presented at summary judgment the arguments raised in her motion for reconsideration. The Court will not save her from her own failure to do so. We, therefore, decline to reconsider her due-process claim.

## II.    CONCLUSION

In sum, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for reconsideration (Docket No. 151). And we **GRANT IN PART AND DENY IN PART** Serrano-Colón's motion for reconsideration (Docket No. 157). Moreover, we **GRANT** the defendants summary judgment on her Title VII claims and her Rehabilitation Act claims.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of December 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE